IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JORGE GEVARA,                      )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     1:09CV681
                                   )
FREDRICK B. HUBBARD, et al.,       )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The instant case comes before the undersigned United States Magistrate Judge for recommended rulings on Plaintiff's Negative Averment of Jurisdiction (Docket Entry 75) and Defendants' Motion for Summary Judgment (Docket Entry 82). (See Docket Entry dated Aug. 28, 2013.) For the reasons that follow, the Court should deny Plaintiff's instant Motion and should deny Defendants' instant Motion in part and grant it in part.

## I. Background

Plaintiff commenced this case by filing a pro se prisoner form Complaint under 42 U.S.C. § 1983 (Docket Entry 2), which he later amended (Docket Entry 59).[1] The Amended Complaint, which Plaintiff

---

[1] Plaintiff's original Complaint lists his name as "Jorge Galeas Jr. (Gevara)." (Docket Entry 2 at 1.) On the Application to Proceed In Forma Pauperis, Plaintiff's name again appears as "Jorge Galeas Jr.," but in the section for "Name under which convicted if different" it lists "Jorge Gevara." (Docket Entry 1 at 2.) Plaintiff also included his "Prison Number" on the Application. (Id.) Records of the North Carolina prison system identify the prisoner with that number as "Jorge Gevara." See

verified (see id. at 37), alleges that Plaintiff, an inmate at Scotland Correctional Institution (id. at 7), sustained an injury to his left hand when Defendant Cory Fields, a correctional officer, threw a meal tray into his cell (id. at 8-9). The Amended Complaint apparently asserts claims under the Eighth Amendment pursuant to 42 U.S.C. § 1983 against Defendant Fields, as well as federal constitutional claims against various other correctional officers, medical staff, and supervisory officials, in connection with the conduct of Defendant Fields and/or the subsequent medical attention Plaintiff received. (See id. at 7-36.)

According to Plaintiff, on the morning of June 1, 2007, he received spoiled milk with his breakfast tray. (Id. at 7.)[2] Plaintiff has averred that he informed Defendant Fields, the officer passing out the breakfast trays, several times about the

---

http://webapps6.doc.state.nc.us/opi/offendersearch.do?method=view (search for 0655559 last completed Jan. 13, 2014).

[2] To the extent the Amended Complaint sets forth Plaintiff's personal knowledge of the relevant events, it effectively constitutes an affidavit in opposition to Defendants' instant Motion. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." (emphasis omitted)); see also 28 U.S.C. § 1746. In addition, Plaintiff's response to the instant Motion (titled "TRUTH AFFIDAVIT" (Docket Entry 88 at 1)) bears an "ATTESTATION" in which Plaintiff "attest[s] under penalty of perjury that the foregoing is true and correct," followed by his signature (id. at 20). This document thus also represents an affidavit, again to the extent it reflects Plaintiff's personal knowledge of the relevant events. Any argument or legal conclusions contained in Plaintiff's filings, however, do not receive any evidentiary weight.

spoiled milk, but Defendant Fields refused to exchange it. (Id. at 7-8.) In Plaintiff's account, when Defendant Fields returned to collect the breakfast trays, "Plaintiff placed the trays on the floor outside of his door and placed his spoiled milk on the trap and stood at his door." (Id. at 8.) When Defendant Fields came by, Plaintiff has asserted that Defendant Fields "hit the milk off the trap[,] spilling it into Plaintiff's cell." (Id.) Defendant Fields then reportedly picked up the trays and "threw them at Plaintiff with force, one by one[,] using unnecessary excessive force against Plaintiff" and causing one tray to "smash[] into Plaintiff's left hand . . . ." (Id. at 8-9; see also Docket Entry 13-1 at 2-11.) Plaintiff's hand thereafter purportedly began to swell, resulting in pain in the hand and arm. (Id. at 11.)[3] Plaintiff has sworn that he reported the incident to other correctional officers (see id. at 12-13) and that nurses examined his hand in the recreation yard (id. at 13), but that none provided medical assistance (id. at 12-15).

According to Defendants, Defendant Fields had no "altercation" with Plaintiff on the morning of June 1, 2007. (Docket Entry 82-2, ¶ 4.) Defendants' evidence also indicates that, on that morning, Plaintiff told Defendant Larry Purcell, another correctional officer, that he did not know what had happened to his hand, which

---

[3] Page 10 of the Amended Complaint appears out of order on the Docket and a mere duplicate of page 12.

-3-

he found swollen when he woke up. (Docket Entry 82-4, ¶ 5.) Moreover, Defendant Gary Crutchfield, an Assistant Superintendent of Programs at Scotland Correctional Institution during the time period at issue in this case (Docket Entry 84, ¶¶ 2-3), has averred that "[i]t would be virtually impossible for any staff person to throw a food tray through the trap door [of the cells] due to the size and width of the trap door and the food tray." (Docket Entry 84, ¶ 9.)

On the afternoon of June 1, 2007, Plaintiff visited the prison infirmary (see Docket Entry 59 at 17) where, according to "a registered nurse employed by the North Carolina Department of Public Safety" who reviewed Plaintiff's medical records (Docket Entry 85, ¶¶ 3, 6), a doctor determined that Plaintiff's hand "was positive with erythma [sic]" and applied a cold pack to said hand (id., ¶ 7). The Parties agree that the infirmary doctor then sent Plaintiff to Scotland Hospital for further evaluation. (Docket Entry 59 at 17; Docket Entry 83, ¶ 5; Docket Entry 85, ¶ 7.) According to Defendants, "the emergency room physician [] found that [Plaintiff's] neurovascular function to his left hand was intact without any significant injury to it" and an x-ray displayed no evidence of fracture. (Docket Entry 83, ¶ 5.) Plaintiff asserts that his hand was "found to have torn vessels and damaged nerves." (Docket Entry 59 at 17.) Defendants describe the emergency room doctor's diagnosis as a contusion to the left hand.

(See Docket Entry 83, ¶ 5; Docket Entry 85, ¶ 8.) Defendants also have averred that hospital staff applied ice to Plaintiff's hand and returned him to the prison. (Docket Entry 85, ¶ 8.)

The following day, June 2, 2007, according to Plaintiff, he did not receive the pain medication prescribed to him, despite attempting to call officers numerous times. (Docket Entry 59 at 18.) On June 3, 2007, Plaintiff passed out in his cell and went back to the hospital. (Docket Entry 85, ¶ 9; see also Docket Entry 59 at 18.) According to Defendants, Plaintiff's "left hand/wrist was very edematous and discolored," although an x-ray again came back negative for any fractures. (Docket Entry 85, ¶ 9; see also Docket Entry 83, ¶ 6.) Defendants further averred that, while at the hospital, Plaintiff "removed his left hand from the sling and refused to keep [it] elevated" and "loosed and removed the ace wrap." (Docket Entry 85, ¶ 9.) The following day, according to Defendants, "the [hospital] physician documented that during morning rounds the ace wrap was found tightly wrapped around [Plaintiff's] wrist with ace wrap hung on IV pole." (Id., ¶ 10.)[4]

---

[4] After returning to the prison on June 4, 2007, Plaintiff apparently received treatment for a similar injury to his right hand, although some conflicts appear in Defendants' evidence as to whether this additional treatment in fact focused on Plaintiff's right or left hand. (Compare Docket Entry 83, ¶ 6 (referencing "the same hand"), with Docket Entry 85, ¶¶ 12 (indicating a Physician Assistant evaluated Plaintiff's right hand for injuries sustained from a thrown food tray, evaluation of right hand at Moore Regional Hospital, diagnosis of contusion to right hand, negative x-rays of left hand), 13 (describing Plaintiff's visit to Pinehurst Surgical Clinic for two injuries to right hand, the first

Plaintiff has asserted that, over the next several weeks, he complained to correctional officers about pain and requested pain medication, but he received no treatment. (Docket Entry 59 at 19-21.) According to Defendants' evidence, medical staff saw Plaintiff several times during that period and treated him with a variety of medications and therapies. (See Docket Entry 83, ¶ 7; Docket Entry 85, ¶¶ 14-27.) According to Plaintiff, he continues to experience pain and numbness in his arm and pain in his neck and back, as well as "hot spots" in various places throughout his body. (Id. at 28.)

Based on the foregoing events, viewing Plaintiff's Amended Complaint through the lense of liberal construction, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (reiterating that "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citation and quotation marks omitted)), Plaintiff pursues claims for "unnecessary excessive force" under the Eighth Amendment (Docket Entry 59 at 8), inadequate medical treatment (id. at 29, 30), and various supervisory failures (id. at 30).

---

from a tray and the second from falling on the same hand two days later).)

## II. Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable factfinder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586-87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a

summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III. Excessive Force

Plaintiff's Amended Complaint alleges that Defendant Fields used "unnecessary excessive force" by throwing a meal tray into Plaintiff's cell and striking his hand. (See Docket Entry 59 at 8-9.) "The [United States] Supreme Court has extended the application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials." Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013). In the context of prison inmates,

> the Eighth Amendment forbids "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 [] (1986) . . . . "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 [] (1992) . . . . "This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 9 [].

Id. In analyzing a prisoner's claim of unnecessary and wanton infliction of pain, "the nature of the force, rather than the extent of the injury, is the relevant inquiry." Id. at 321.

Defendants argue that Defendant Fields did not use excessive force against Plaintiff (Docket Entry 86 at 9-11) and that, in any event, he enjoys qualified immunity (id. at 17-18). Under the qualified immunity doctrine, a "government official will be granted

-8-

immunity unless (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct." Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010).

Although they invoke qualified immunity, Defendants simply argue that the evidence does not support Plaintiff's account of Defendant Fields' conduct. (Docket Entry 86 at 9-11, 17-18.) They do not contend that Plaintiff's averments, taken as true, fail to describe a constitutional violation. (Id.) They likewise have not developed any argument that any violation failed to qualify as clearly established at the time. (Id.) Defendants' invocation of qualified immunity thus merges with their contention that Plaintiff's claim against Defendant Fields falls short as a matter of law.[5]

---

[5] Defendants do argue that, "[e]ven if the event took place as Plaintiff alleged, it would not produce the injuries Plaintiff complained of." (Docket Entry 86 at 17-18; see also id. at 11 (citing Docket Entry 83, ¶ 9-11).) The injuries to which Defendants refer do not include the initial contusion to Plaintiff's hand, but rather arm, neck, and body pain Plaintiff developed after the incident. (See Docket Entry 83, ¶ 8-10; Docket Entry 86 at 7-8.) The extent of any injury Plaintiff allegedly developed after or as a result of the initial contusion may speak to the nature of the force Defendant Fields allegedly exercised against Plaintiff. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." Id. at 38. Whether or not Plaintiff's later-claimed injuries resulted from Defendant Fields' alleged use of force thus does not solely determine the presence of a constitutional violation as a matter of law. Finally, at the time of the incident in question, "[t]he threshold requirement that

-9-

According to Defendants, the following evidence should cause the Court to discredit Plaintiff's version of events:

(1) Defendant Purcell averred that, on the morning of June 1, 2007, Plaintiff said that he did not know what had happened to his hand and that he had found it swollen when he woke up (Docket Entry 82-4, ¶ 5);

(2) Defendant Crutchfield swore that "[t]he size and width of the trap doors in the cells make it virtually impossible for any staff person to throw a food tray through one" (Docket Entry 84, ¶ 9);

(3) Defendant Crutchfield further averred that Plaintiff's grievance concerning the incident "was fully investigated and there was nothing which substantiated Plaintiff's complaints" (id., ¶¶ 7-8); and

(4) Defendant Teresa Jones, a former Assistant Unit Manager at Scotland Correctional Institution (Docket Entry 82-1, ¶ 2), swore that "other inmates [in Plaintiff's unit] could not see anything because the recreation cell obstruct [sic] the view into [Plaintiff's] cell" (id., ¶ 8) and Defendant Crutchfield added that

---

a plaintiff suffer more than a *de minimis* injury to state an excessive force claim was [the] settled law in [the Fourth C]ircuit," Hill, 727 F.3d at 320; however, Defendants have not developed any argument that the initial pain and contusion to Plaintiff's hand alone constituted nothing more than a de minimis injury, such that qualified immunity would insulate Defendant Fields from liability notwithstanding the change in the law brought about by Wilkins (see Docket Entry 86 at 17-18).

"[i]t is [] virtually impossible for any inmate on either side of the cell where [Plaintiff] was held to be see [sic] directly in from of [sic] [Plaintiff's] cell" (Docket Entry 84, ¶ 9).

Plaintiff, on the other hand, has averred that Defendant Fields, unprovoked, threw a tray into Plaintiff's cell, hitting him on the hand. (Docket Entry 59 at 8-9.) Moreover, Plaintiff provided affidavits from other inmates who claim they witnessed Defendant Fields throw the tray. (See Docket Entry 13-2 at 2-11.) A material question of fact thus exists concerning the actions of Defendant Fields on the morning of June 1, 2007. Although Defendants describe it as "virtually impossible" for anyone to throw a tray through one of the trap doors and for any of the other inmates to have seen into Plaintiff's cell (Docket Entry 86 at 11 (citing Docket Entry 82-1, ¶ 8; Docket Entry 84, ¶ 9)), the record fails to establish as a matter of law that Defendant Fields did not throw or forcefully shove a tray through the slot in Plaintiff's cell door. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Medicine Shoppe Intern., Inc. v. Siddique, __ F. App'x __, __, No. 12-2001, 2013 WL 5912515, at *3 (4th Cir. Nov. 5, 2013) (unpublished) (quoting Anderson, 477 U.S. at 255).

Construing the evidence in a light most favorable to Plaintiff, a reasonable fact finder could determine that Defendant

Fields propelled a tray into Plaintiff's cell and hit Plaintiff in the hand, thereby violating the Eighth Amendment proscription against unnecessary and wanton infliction of pain. Defendants have failed to identify an absence of evidence supporting Plaintiff's claim. See Celotex Corp., 477 U.S. at 325. The Court therefore should deny Defendants' instant Motion as it pertains to Plaintiff's claim against Defendant Fields.

### IV. Inadequate Medical Treatment

Plaintiff's Amended Complaint next alleges that "[t]he medical treatment that Plaintiff have [sic] received by [Defendants] is inadequate and violates the standards of professional care." (Docket Entry 59 at 29.) It further asserts that Plaintiff has "only be [sic] given treatment for his pain with medication that don't [sic] take his pain away but make [sic] it worse and for these reasons Plaintiff cannot do his daily activities anymore." (Id.)

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human

<u>needs</u> — e.g., food, clothing, shelter, <u>medical care</u>, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." <u>Id.</u> at 200 (emphasis added).

For a claim based on inadequate medical care, Plaintiff "must demonstrate that the [officials] acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard - a showing of mere negligence will not meet it." <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999). Instead, the "deliberate indifference" prong requires Plaintiff to make "two showings":

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the [official] *should have* recognized it; [he] actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient.

<u>Parish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in original).

"The subjective component therefore sets a particularly high bar to recovery." <u>Iko</u>, 535 F.3d at 241. Indeed, "[t]o establish that a health care provider's actions constitute deliberate

-13-

indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In the instant case, the undisputed record evinces no medical treatment, or failure to treat, that rises to the level of deliberate indifference. Plaintiff received treatment for his hand the same day the injury appeared, June 1, 2007, both in the prison infirmary and at a hospital. (See Docket Entry 59 at 17; Docket Entry 83, ¶ 5; Docket Entry 85, ¶¶ 7-8.) He underwent hospital treatment again on June 3 and 4, 2007. (See Docket Entry 59 at 18-19; Docket Entry 85, ¶ 9.) Plaintiff saw nurses or doctors in the prison infirmary and obtained treatment and pain medication for his hand several times in the following months. (Docket Entry 85, ¶¶ 14-27.) He also visited medical personnel and received treatment on numerous occasions from the beginning of 2008 through late 2012 for complaints of rashes and pain throughout his body. (Id., ¶¶ 28-46.) These medical visits included EMG testing (id., ¶ 29), physical therapy (id., ¶ 30), x-rays (id.), and MRIs (id., ¶ 33-41), as well as appointments with specialists (id., ¶¶ 29-30,

-14-

32-33, 36, 38-39). To the extent Plaintiff disagrees with any treatment provided (see, e.g., Docket Entry 59 at 27-28), such disagreement does not give rise to a constitutional violation, see Wright, 766 F.2d at 849.

Plaintiff also claims that various medical staff and/or correctional officers ignored Plaintiff's requests for medical attention. (See, e.g., Docket Entry 59 at 19-20, 22, 27-29.) "Even assuming that [the injury to Plaintiff's hand] created a serious medical need, 'his allegations regarding his medical treatment do not rise to the level of neglect.'" Duncan v. Smith, No. 1:12CV793, 2013 WL 3968026, at *4 (M.D.N.C. July 31, 2013) (unpublished) (Webster, M.J.) (quoting Williams v. Branker, 462 F. App'x 348, 353 (4th Cir. 2012)). These allegations amount to "negligence, medical malpractice, and disagreement with medical treatment, which claims do not support relief under § 1983." Gregory v. Prison Health Servs., Inc., 247 F. App'x 433, 435 (4th Cir. 2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Court therefore should grant Defendants' instant Motion with regard to the claim(s) of inadequate medical treatment.

## V. Supervisory Defendants

Defendants next argue that Plaintiff's claims against Defendants Fredrick Hubbard, Crutchfield, Paula Smith, Debra McLeod-Duncan, and Boyd Bennett, all supervisory officials at Scotland Correctional Institution, must fail. (Docket Entry 86 at

14-16.) Plaintiff's Amended Complaint apparently alleges claims against these supervisory Defendants (and others) for failure to supervise (see Docket Entry 59 at 20, 24) and failure to protect (id. at 30).[6]

As an initial matter, the record contains no evidence of personal involvement by these Defendants in the incident with Defendant Fields or with Plaintiff's medical treatment. (See Docket Entry 59 at 7-36.) Additionally, although supervisory liability may exist under Section 1983 where

---

[6] The Amended Complaint also asserts claims against Defendants for "retaliatory treatment for filing suits and for filing grievances." (Docket Entry 59 at 30 (capitalization modified); see also id. at 35-36.) Plaintiff claims that, after he filed grievances against several Defendants, Defendant Fields began verbally harassing him. (Id. at 35.) Further, according to Plaintiff, he "was transferred to stop him from collecting evidences [sic] about the incidents and in order to cover up the assault and the other incidents." (Id.) Finally, Plaintiff states in conclusory fashion that he still faces retaliation in the form of "be[ing] served with serious false infractions, denial of medical treatments and deprivation of his constitutional rights just for filing suits and grievances." (Id.) "For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right." Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)). "[P]risoners do not have a constitutional right of access to the grievance process." Id. Moreover, "[v]erbal harassment or abuse by prison officials in itself does not state a constitutional deprivation under section 1983." Johnson v. Laham, No. 91-7296, 9 F.3d 1543 (table), 1993 WL 469160, at *3 (4th Cir. Nov. 15, 1993) (unpublished). Finally, Plaintiff fails to present any factual matter to support his conclusory assertions and thus his contentions as to these matters fail as a matter of law. See Daye, 417 F. App'x at 319 ("[T]he plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension.").

> (1) [] the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) [] the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) [] there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff,

Shaw v. Shroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted), the record does not reflect the existence of these factors. Plaintiff reportedly wrote letters to these Defendants concerning the incident with Defendant Fields (Docket Entry 59 at 24), but such letters would have informed these Defendants of the incident only after the fact; therefore, no causal link could exist between the injury Plaintiff suffered and any inaction on the part of these Defendants.

Plaintiff also wrote to these Defendants concerning complaints about his medical treatment. (Id. at 20.) However, as discussed previously, see supra Section IV., Plaintiff suffered no underlying constitutional injury at the hands of those individuals supervised by these Defendants (i.e., medical staff and/or correctional officers). To the extent these Defendants' liability arises solely from their alleged legal responsibility for the actions of any medical staff or correctional officers who treated Plaintiff, such claim(s) must also fail. Huggins v. Weider, 105 F. App'x 503, 505 (4th Cir. 2004) (citing Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir. 2001)) ("There can be no liability under § 1983

-17-

on the part of a supervisory official in the absence of a constitutional violation on the part of those supervised."). In sum, nothing on the record would allow a reasonable factfinder to conclude that any supervisory Defendants (including those not specifically named in Defendants' Motion) acted with deliberate indifference to Plaintiff's health or safety.

## VI. Negative Averment of Jurisdiction

Prior to Defendants' instant Motion, Plaintiff filed a "Negative Averment of Jurisdiction." (Docket Entry 75.) Through this document, he "demands a hearing de novo for negative averment of jurisdiction be held at Guilford County District Court of the United States Middle District of North Carolina to cease the continuous and unlawful restraint of [his] sovereignty, natural life, liberty, freedom, private, and unalienable rights." (Id. at 1.) As an initial matter, it is not clear that Plaintiff in fact intended the instant Motion for this case. The instant Motion's caption lists as "Respondents" the State of North Carolina, the United States of America, the United States Congress, and the United States Supreme Court, and it refers to Plaintiff as "Petitioner." (Id.) Plaintiff previously filed an "Alternative Writ of Habeas Corpus for Averment of Jurisdiction" in this Court, in a form very similar to the instant Motion, see Gevara v. State of North Carolina Guilford Cnty., Case No. 1:12CV373, Docket Entry 1, which the Court treated as an attack on his state court criminal

conviction and dismissed without prejudice due to procedural deficiencies (including failure to utilize the proper forms for such a petition), see Gevara, Case No. 1:12CV373, Docket Entry 7 (adopting recommendation of Magistrate Judge). To the extent Plaintiff intends the instant Motion as a renewed petition for a writ of habeas corpus under 28 U.S.C. § 2254, it fails for the same reasons.

However, if in fact Plaintiff intended the instant Motion for this action, it cannot succeed. Plaintiff's original form Complaint lists a prison identification number of 0655559. (Docket Entry 2 at 4.) The records of the North Carolina prison system identify that prisoner as "Jorge Gevara," an inmate serving a sentence of 49 years, 5 months, and 25 days for first-degree rape. See http://webapps6.doc.state.nc.us/opi/offendersearch.do?method=view (search for 0655559 last completed Jan. 13, 2014). Plaintiff's instant Motion thus seeks to undermine his conviction and sentence for first-degree rape, but may not do so via § 1983 without first showing that such conviction has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477 (1994). Because Plaintiff has failed to make such a showing, his instant Motion lacks merit.

## VII. Conclusion

Defendants have failed to show the absence of a material question of fact with regard to Plaintiff's claim of excessive force in violation of his Eighth Amendment rights against Defendant Fields. However, Defendants have identified an absence of evidence to support Plaintiff's claim(s) of inadequate medical treatment, as well as against the supervisory Defendants, and, as to those claims, Plaintiff has failed to "set forth specific facts showing that there is a *genuine issue for trial*," Matsushita Elec. Indus., 475 U.S. at 586-87. Finally, Plaintiff cannot attack his underlying criminal conviction in this proceeding.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 82) be granted in part and denied in part, in that the claim of excessive force against Defendant Cory Fields should survive but the claims against all other Defendants should be dismissed.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Negative Averment of Jurisdiction (Docket Entry 75) (construed by the Clerk as a motion) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 13, 2014