```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


JORGE GEVARA,                    )
                                 )
            Plaintiff,           )
                                 )
     v.                          )    1:09CV681
                                 )
FREDRICK B. HUBBARD, et al.,     )
                                 )
            Defendants.          )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is a supplemental memorandum in support of summary judgment (Doc. 102) filed by Cory Fields, the sole remaining Defendant in this matter, in response to this court's order dated April 29, 2014 (Doc. 100). Pro se Plaintiff Jorge Gevara (a/k/a Jorge Galeas Jr.–Menchu© Trust), an inmate, has twice refused delivery of Defendant's supplemental memorandum and has failed to file a timely response. (See Docs. 101, 103.) This matter is now ripe for adjudication, and, for the reasons that follow, Defendant's motion for summary judgment will be granted.

I.   **BACKGROUND**

The facts in the case are fully set out in the Magistrate Judge's Memorandum Opinion and Recommendation ("Recommendation")

(Doc. 91) and were adopted by this court (Doc. 100); they will only be cursorily repeated here.

The following disputed facts are recited as alleged in Plaintiff's amended complaint. Plaintiff is an inmate in Scotland Correctional Institution where Defendant Fields serves as a correctional officer. This § 1983 action arises from the injuries Plaintiff sustained after Defendant Fields threw a meal tray into Plaintiff's cell. On June 1, 2007, Plaintiff received spoiled milk with his breakfast. Plaintiff informed Defendant Fields several times about the condition of the milk, but Defendant Fields refused to replace it. "Plaintiff [then] placed the trays on the floor outside of his door and placed his spoiled milk on the trap and stood at his door." (First Am. Complaint ("First Am. Compl.") (Doc. 59) ¶ 33.) Defendant Fields, who at the time was collecting the meal trays, "hit the milk off of the trap[,] spilling it into Plaintiff's cell." (Id. ¶ 34.) Defendant then picked up the trays and threw them through the trap, one by one, causing one tray to hit Plaintiff's left hand. (Id. ¶¶ 35-36.) Plaintiff's hand then began to swell, resulting in pain. (Id. ¶ 40.) Plaintiff claims multiple injuries of varying severity resulted directly and indirectly from the tray striking his left hand.

According to Defendant Fields, he had no altercation with Plaintiff on the morning of June 1. The Assistant Superintendent of Programs at Scotland Correctional stated that "[i]t would be virtually impossible for any staff person to throw a food tray through the trap door [of the cells] due to the size and width of the trap door and the food tray." (Affidavit for Gary Crutchfield (Doc. 84) ¶ 9.)

## II. PROCEDURAL HISTORY

The Magistrate Judge's Recommendation granted summary judgment in favor of all claims, except for an excessive force claim under the Eighth Amendment against Defendant Fields. Plaintiff submitted affidavits of other inmates who claimed they witnessed Defendant Fields throw a tray at Plaintiff. As the Magistrate Judge correctly found, although Defendant Fields invoked qualified immunity, he simply argued that the facts were not as Plaintiff alleged.[1] (Recommendation (Doc. 91) at 9.) Refusing to make credibility determinations at the summary judgment stage, the Magistrate Judge rejected Defendant Fields' argument without reaching qualified immunity.

---

[1] Specifically, the Magistrate Judge found that "[Defendants] do not contend that Plaintiff's averments, taken as true, fail to describe a constitutional violation. They likewise have not developed any argument that any violation failed to qualify as clearly established at the time." (Recommendation (Doc. 91) at 9 (citation omitted).)

In the objection to the Recommendation, Defendant Fields suggested for the first time that this court should grant summary judgment sua sponte on qualified immunity grounds, even though such argument was not developed in Defendant's original brief. (Defs.' Objections to Recommended Decision of Mag. J. (Doc. 94) at 3.) Because Defendant Fields offered insufficient explanation in his brief to justify this court taking such action, this court adopted the Recommendation as to all matters except the lingering qualified immunity question and ordered further briefing. (Order (Doc. 96).) After considering the briefing, this court found that the goals of qualified immunity weighed in favor of deciding the applicability of qualified immunity prior to trial. Pursuant to Federal Rule of Civil Procedure 56(f), this court then gave notice of its intention to rule on qualified immunity and gave the parties an opportunity to brief the issue. (Id. at 4-5.)

III. **LEGAL STANDARD**

A motion for summary judgment is appropriately denied when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). In considering a motion for summary judgment, the court is not to weigh the

evidence, but rather must determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. Id. at 255. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Id. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Federal Rule of Civil Procedure 56(f) allows a court, "[a]fter giving notice and a reasonable time to respond," to "grant the [summary judgment] motion on grounds not raised by a party . . . ." Fed. R. Civ. P. 56(f)(2). "Failure to give the required notice is reversible error." Coward v. Jabe, 474 Fed. Appx. 961, 963 (4th Cir. 2012).

**IV. ANALYSIS**

    **A. The Eighth Amendment and Qualified Immunity**

"The Supreme Court has extended the application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials." Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013). "After incarceration, only the unnecessary and wanton infliction of

pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Ingraham v. Wright, 430 U.S. 651, 670 (1977)(citations omitted)(internal quotation marks omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)(internal quotation marks omitted).

Prior to 2010, the Fourth Circuit's excessive force inquiry focused on the extent of the injuries suffered by a plaintiff. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) abrogated by Wilkins v. Gaddy, 559 U.S. 34 (2010). "[U]nder Norman . . . a plaintiff could not prevail on an excessive force claim 'absent the most extraordinary circumstances,' if he had suffered only de minimis injury. Hill, 727 F.3d at 322 (quoting Norman, 25 F.3d at 1263). In Wilkins v. Gaddy, 559 U.S. 34 (2010), the Supreme Court abrogated Norman and clarified that the relevant inquiry for an excessive force claim is the amount of force used, not the injuries sustained. Id. at 39 ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts."). The injury analysis is not irrelevant, however, as "[t]he extent of injury may also provide

some indication of the amount of force applied." Id. at 37. Moreover, while not "every malevolent touch by a prison guard gives rise to a federal cause of action," Hudson, 503 U.S. at 9, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

"A government official who is sued in his individual capacity may invoke qualified immunity." Bland v. Roberts, 730 F.3d 368, 391 (4th Cir. 2013). In determining whether a defendant is entitled to qualified immunity, a court must decide (1) whether the defendant has violated a constitutional right of the plaintiff and (2) whether that right was clearly established at the time of the alleged misconduct. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004). Although the Supreme Court has advised that addressing each prong in order may be "beneficial," judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

**B. Constitutional Violation**

Under the current Wilkins standard governing excessive force claims, this court finds the force applied when Defendant Fields allegedly threw a meal tray through Plaintiff's cell hatch to be de minimis. Numerous courts have held that throwing small objects directly at an inmate does not amount to a constitutional violation. E.g., Samuels v. Hawkins, 157 F.3d 557, 558 (8th Cir. 1998)(throwing cup of water at inmate held to be de minimis use of force); White v. Holmes, 21 F.3d 277, 279 (8th Cir. 1994)(throwing a set of keys at an inmate determined to be de minimis use of force); Ballard v. Gray, Civil Action No. 9:11cv198, 2013 WL 139360 (E.D. Tex. Jan. 10, 2013), appeal dismissed (Mar. 12, 2013)(throwing pills at an inmate causing negligible injuries held not a constitutional violation); Fackler v. Dillard, No. 06-10466, 2006 WL 2404498, at *3 (E.D. Mich. Aug. 16, 2006)("Throwing a small (allegedly four ounce) cup of urine through an inmate's food slot resulting in urine splashing on the inmate undoubtedly constitutes a de minimis use of force."); Calabria v. Dubois, No. 93-1742, 1994 WL 209938 (1st Cir. 1994)(throwing a radio belt at an inmate causing minor bleeding to the inmate's mouth held not to be a constitutional violation).

In Moore v. Machado, No. C 07-0284 SBA (PR), 2009 WL 4051082 (N.D. Cal. Nov. 20, 2009), the district court addressed whether the alleged throwing of a "pork dinner tray" at a Muslim defendant constituted an Eighth Amendment violation. In Moore, the plaintiff alleged that, after informing the defendant that he was a vegetarian, the defendant

> [F]orcibly threw the pork dinner tray at the plaintiff with great force while stating, "I don't give a fuck if you're a Muslim." The dinner tray hit the right side of the plaintiff's right thigh causing plaintiff to hit his left knee into the metal toilet and to hit the plaintiff's left elbow on the wall . . . .

Id. at *4. Noting that "the Ninth Circuit does not require a plaintiff to show an injury that is more than de minimis, but it does require a showing of force that was more than de minimis," the court found "that the throwing of the tray alleged here was a de minimis application of force, even if the tray was thrown forcefully." Id. As the court noted, "[t]he act may have been insulting, unwarranted, and humiliating, but none of these attributes gives it a constitutional dimension." Id.

The de minimis nature of Defendant Fields' actions is especially apparent when contrasted with those situations in which courts have found a constitutional violation. In Hudson, for instance, the Supreme Court found the use of force applied to a handcuffed inmate was not de minimis when one officer "punched [the inmate] in the mouth, eyes, chest, and stomach

while [another officer] held the inmate in place and kicked and punched him from behind." 503 U.S. at 4. In Smith v. Vavoulis, 373 Fed. Appx. 965 (11th Cir. 2010), a handcuffed inmate was elbowed in the head, had his legs grabbed "causing him to fall face first onto the floor," punched in the head, kicked, and had mace sprayed in his face by an officer. Id. at 966-67. In Hill, the officer stipulated that the force used was sufficient to establish an Eighth Amendment violation where the plaintiff alleged the officer "[w]ithout provocation . . . assaulted [plaintiff], punching him in the abdomen and ribs, and elbowing the side of his head," threatened to break his neck, and knocked his head on a gate on the way out of the prison cell. 727 F.3d at 315.

This court finds the present case to be substantially similar to the line of cases holding that the throwing of a small, otherwise innocuous object at an inmate constitutes a de minimis application of force. Similar to the force employed in those cases, here, the act of throwing the tray was more a symbolic act of aggression than an application of excessive force. Therefore, this court finds the force de minimis and, as such, insufficient to state a constitutional violation.

However, this finding does not end the inquiry. In a separate but related line of cases, the Supreme Court has held

while [another officer] held the inmate in place and kicked and punched him from behind." 503 U.S. at 4. In Smith v. Vavoulis, 373 Fed. Appx. 965 (11th Cir. 2010), a handcuffed inmate was elbowed in the head, had his legs grabbed "causing him to fall face first onto the floor," punched in the head, kicked, and had mace sprayed in his face by an officer. Id. at 966-67. In Hill, the officer stipulated that the force used was sufficient to establish an Eighth Amendment violation where the plaintiff alleged the officer "[w]ithout provocation . . . assaulted [plaintiff], punching him in the abdomen and ribs, and elbowing the side of his head," threatened to break his neck, and knocked his head on a gate on the way out of the prison cell. 727 F.3d at 315.

This court finds the present case to be substantially similar to the line of cases holding that the throwing of a small, otherwise innocuous object at an inmate constitutes a de minimis application of force. Similar to the force employed in those cases, here, the act of throwing the tray was more a symbolic act of aggression than an application of excessive force. Therefore, this court finds the force de minimis and, as such, insufficient to state a constitutional violation.

However, this finding does not end the inquiry. In a separate but related line of cases, the Supreme Court has held

that even de minimis uses of physical force can be actionable under the Eighth Amendment if the use of force is "repugnant to the conscience of mankind." Hudson, 503 U.S. at 10. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Id. at 9 (citation omitted). As summarized by the Fourth Circuit in Hill:

> District courts within our circuit have similarly found only egregious conduct "repugnant to the conscience of mankind." See, e.g., Davis v. Lester, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001) (finding that forcing a prisoner to be "restrained for 48 hours with all four of his limbs and his chest immobilized, lying on his back in his own urine in a cold cell" to be repugnant to the conscience of mankind); Peoples v. S.C. Dep't of Corr., No. 8:07-1203-CMC-BHH, 2008 WL 4442583, at *4-10 (D.S.C. Sept. 25, 2008) (plaintiff[']s allegations that prison officials flooded his cell with unknown "chemical munition," after which he was not allowed to seek medical attention, shower, or clean his cell, rose to the level of alleging conduct repugnant to the conscience of mankind); Acevedo v. Warner, No. 7:03CV00526, 2005 U.S. Dist. LEXIS 32332, *11-12, 15-*16 (W.D. Va. Mar. 29, 2005) (finding that beating a restrained prisoner, making racial slurs to him, and smearing feces and urine on his face was repugnant to the conscience of mankind).
>
> On the other hand, breaking a prisoner's finger by slamming his hand in a mail slot, Hines, 142 Fed. Appx. at 781, and hitting a prisoner with twelve blasts of pepper spray while confined in a cell, Jackson, 19 Fed. Appx. at 101, were not "repugnant to the conscience of mankind." Moreover, we have previously found in favor of defendants who assaulted a restrained inmate in circumstances similar to those alleged by Hill. See Germain, 2000 WL 139255, at *2-3

- 11 -

> (affirming summary judgment for defendants who sprayed mace at and struck with a baton a prisoner who was restrained, locked in his cell, compliant, and was not involved in the disturbance). We have not classified mere brute force, therefore, as "repugnant to the conscience of mankind."

Hill, 727 F.3d at 324.

Here, the alleged conduct is "more akin to brute force" or a showing of brute force than those "extraordinary circumstances" such as "humiliation, degradation, or torture." See id. While the alleged conduct is undeniably disgraceful, such conduct cannot be said to be "repugnant to the conscience of mankind" as interpreted by courts in this circuit.

Because the alleged conduct amounts to a de minimis application of force and is not "repugnant to the conscience of mankind," no constitutional violation is present. Therefore, Defendant Fields is entitled to summary judgment as the Plaintiff has failed to present evidence of a constitutional violation. As such, this court finds it unnecessary to reach the second prong of the qualified immunity analysis.

## V. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant Fields' Motion for Summary Judgment (Doc. 82) is **GRANTED** and that this action is **DISMISSED**. A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 25th day of June, 2014.

                                   /s/ William L. Osteen, Jr.
                            _____
                                United States District Judge